UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDWARD ROBINSON,

Plaintiff,

v.

DATACORE SOFTWARE CORPORATION,

Defendant.

Case No. 25-cv-02552-NW

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT; ORDER DENYING MOTION TO EXCLUDE**

Re: ECF Nos. 35, 40

United States District Court
Northern District of California

Plaintiff Edward Robinson ("Plaintiff" or "Robinson") sued Defendant DataCore Software Corporation ("Defendant" or "DataCore"), his former employer, alleging wrongful termination in violation of public policy. Compl., ECF No. 1-1. Defendant answered the complaint. Answer, ECF No. 20.

Defendant now moves for summary judgment. Mot. for Summary Judgment, ECF No. 40 ("Mot."). The motion is fully briefed. Opp'n, ECF No. 42; Reply, ECF No. 43. Defendant additionally moves to exclude the opinions of Plaintiff's expert. ECF No. 35. Having considered parties' briefing and the relevant legal authority, the Court found these motions suitable for resolution without oral argument and vacated the hearing. Civil Local Rule 7-1(b). The Court DENIES Defendant's motion for summary judgment and DENIES Defendant's motion to exclude expert testimony.

I.    BACKGROUND

Robinson was a Senior Director of Business Development with Perifery, a division of DataCore. Robinson worked for Perifery from September 5, 2023, until November 8, 2024, when he resigned. During his employment, Robinson first reported to Perifery's Chief Operating Officer/Chief Product Officer Abhijet Dey, and later to Chief Executive Officer Dave Zabrowski.

Robinson explains that his role at Perifery was to "bring to market a commercial version of a computer software open source project, 'OpenEBS.'" Compl. ¶ 5. DataCore contributed to the OpenEBS software, but it was owned by a division of the Linux Foundation called Cloud Native Computing Foundation ("CNCF"). DataCore planned to create and commercialize a "pro" version of OpenEBS, which it called "OpenEBS PRO."

Soon after Robinson joined Perifery, the OpenEBS project was archived by CNCF, which prevented Robinson from proceeding with the plan to create DataCore's commercial version of OpenEBS. "Robinson was then given the responsibility to work with CNCF, the OpenEBS project team and DataCore staff to recover the software from archive to 'sandbox,' enabling DataCore to resume commercialization." *Id*. ¶ 7.

As part of the process to resume commercialization, Robinson contends that the Linux Foundation advised DataCore that the OpenEBS PRO name and DataCore's use of OpenEBS would violate trademark regulations. Robinson does not specify when Linux alerted DataCore of the trademark concerns. Robinson's then-supervisor, Dey, instructed the team to call the product "Puls8" instead. Robinson "advised Dey [that] clearance was still needed by Linux for the 'Puls8' name and a release needed from Linux for other violations of the use of 'OpenEBS.'" *Id*. ¶ 7. Robinson alleges that, "[i]n response[,] Dey contended it was 'OK' for DataCore to use that name and directed Robinson not to discuss the Puls8 name or obtain a release from Linux." *Id*.

In October 7, 2024, "Robinson filed a formal complaint with the DataCore Human Resources ("HR") Department" to document "Dey's multiple attempts at trademark violations regarding the OpenEBS PRO product, a video of Dey attempting to force staff to violate CNCF governance rules, and emails showing that Dey lied regarding allegedly being excluded from Robinson's sale call." *Id*. ¶ 9. On October 25, 2024, the HR department "rejected Robinson's complaint about Dey suggesting it was conjured up to hide a 'performance' issue." *Id*. ¶ 10. The HR department then "discussed a 'possible exit' for [Robinson] from DataCore by resigning." *Id*.

Robinson asserts that when he did not agree to resign initially, Zabrowski and the HR department "fabricated a number of allegations relating to his performance that would be an ostensible platform for his termination"; Robinson disagrees with the criticism of his performance.

2

*Id*. ¶ 11. Robinson states that he knew "he was being set up for a termination based on false information from his superiors," so he elected to resign on November 8, 2024. He maintains that his resignation resulted from "aggravated and intolerable conditions and constituted a constructive termination." *Id*. ¶ 15.

Robinson brings two claims against DataCore: (1) wrongful termination in violation of public policy, and (2) violation of California Labor Code Sections 98.6 and 1102.5 (unlawful retaliatory termination). DataCore moves for summary judgment on both claims, alleging that Robinson has failed to "make a showing sufficient to establish the existence of [] element[s]" of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II.    LEGAL STANDARD

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp.*, 477 U.S. at 322-23, and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine issue of material fact exists if there is sufficient evidence such that a reasonable jury could return a verdict for the non-moving party. *Id*. at 248. The Court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id*. at 249. Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

To defeat summary judgment, once the moving party has met its burden, the non-moving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, and conclusory assertions will not suffice. *See Anderson*, 477 U.S. at 252; *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

United States District Court
Northern District of California

Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    DISCUSSION

 Robinson cannot succeed on his wrongful termination claim if he is unsuccessful on his statutory claim, which encompasses Sections 1102.5 and 98.6.  *Featherstone v. S. Cal. Permanente Med. Grp.*, 10 Cal. App. 5th 1150, 1169-70 (2017).  Section 1102.5 "prohibits retaliation for disclosing information about a violation or noncompliance with federal, state, or local statute, rule, or regulation," and for "refusing to participate in such activity."  *St. Myers v. Dignity Health*, 44 Cal. App. 5th 301, 314 (2019); Cal. Labor Code §§ 1102.5(b)-(c).  A retaliation claim under Section 98.6 has similar requirements to Section 1102.5, and protects against retaliation by prohibiting employers from discharging an employee for filing a bona fide complaint or claim relating to certain rights.  *St. Myers*, 44 Cal. App. 5th at 314, 350.

Motions for summary judgment in whistleblower retaliation actions are analyzed under a burden-shifting framework.  Cal. Labor Code § 1102.6.  First, a plaintiff must "'demonstrate[] by a preponderance of the evidence' that the employee's protected whistleblowing was a 'contributing factor' to an adverse employment action."  *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 712 (2022) (citing Cal. Labor Code § 1102.6).  Next, "once the employee has made that necessary threshold showing, the employer bears 'the burden of proof to demonstrate by clear and convincing evidence' that the alleged adverse employment action would have occurred 'for legitimate, independent reasons' even if the employee had not engaged in protected whistleblowing activities."  *Id.*  Importantly, a "plaintiff does not need to show that the employer's nonretaliatory reason was pretextual"; a plaintiff has met their burden "if it is shown that the employer also had at least one retaliatory reason that was a contributing factor in the action."  *Id*. at 716.

### 1.    Whether Plaintiff has demonstrated that his disclosure was a contributing factor to his adverse employment action.

To prevail on his prima facie statutory claim, Robinson must show, by a preponderance of

4

the evidence, that (1) he engaged in a protected activity, (2) his employer subjected him to an adverse employment action, and (3) that his protected activity was a "contributing factor" or causal link between the two. *St. Myers*, 44 Cal. App. 5th at 314, 352. Disclosure of any information that an "employee has reasonable cause to believe" concerns a violation of a statute, rule or law to "a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance" can constitute protected activity. Cal. Lab. Code § 1102.5. "Although the employee does not need to prove an actual violation of the law, he must be able to point to some legal foundation for his suspicion – some statute, rule or regulation which may have been violated by the conduct he disclosed." *Banerji v. Leggett & Platt, Inc.*, No. EDCV 15-01653-DTB, 2016 WL 11746407, at \*9 (C.D. Cal. Nov. 18, 2016) (internal citations omitted).

Here, the Court finds that Robinson has presented the limited amount of proof required at this stage to establish that he engaged in a protected activity, was subjected to adverse employment action, and that his departure from DataCore was causally linked to his disclosure. *Lawson*, 12 Cal. 5th at 718. For the first element, Robinson presents a triable issue regarding whether he engaged in protected activity, namely disclosing information about suspected trademark violations to the HR Department. Robinson contends that he reasonably believed that Dey's approval of the Puls8 name infringed on CNCF's trademark, and that he was raising alarms to his superiors regarding DataCore's violation of trademark laws. Decl. of Edward Robinson, ¶¶ 9-10, 12, Exs. 5, 7-9, ECF No. 42-2. The evidence shows that Robinson raised his concerns with the HR Department. *Id*. ¶ 15, Ex. 14. DataCore argues that a trademark violation may not have in fact occurred. But that is not the issue. Given the evidence, a jury could conclude that Robinson reasonably believed that he was disclosing a violation of trademark laws when he complained about the Puls8 name to his HR Department.

Second, Robinson contends that he has sufficiently shown that he experienced an adverse employment action when he was constructively discharged from DataCore. "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign. Although the employee may say, 'I quit,' the employment relationship is actually severed involuntarily by

5

the employer's acts, against the employee's will." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244–45 (1994). A plaintiff must show that a reasonable person faced with the adverse working conditions would find them so intolerable, meaning unusually "aggravated" or amount to a "continuous pattern," that there would be no alternative except quitting. *Id*. at 1247-48. Robinson has submitted evidence to show: that he was removed from multiple sales opportunities, central to his role; he was instructed not to communicate with team members; his disclosures about the trademark violations were not addressed or investigated by DataCore's HR Department; and, instead, HR "stated [Robinson] violated the DataCore security policy . . . [but Robinson] never received a copy of that policy." Decl. of Edward Robinson, ¶¶ 19-21. The Court finds, that at this stage in the proceedings, Robinson has made a sufficient showing that he experienced an adverse employment action when he was constructively discharged from DataCore.

Finally, the Court finds that Robinson has met his minimal burden on summary judgment to establish a causal link between his protected action of reporting of trademark concerns, and the adverse employment action of constructive termination that occurred about one month later. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (finding that that sufficient evidence of causation existed where adverse employment action occurred less than three months after the protected activity); *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000) ("The causal link may be established by an inference derived from circumstantial evidence, such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision." (internal quotations and citations omitted)).

The Court finds that Robinson has presented sufficient evidence to establish by a preponderance of the evidence that retaliation for his disclosure of potential trademark violations "was a contributing factor in [his] contested employment action." *Lawson*, 12 Cal. 5th at 718.

> **2.    Whether Defendant has shown that Plaintiff's adverse employment action would have occurred for legitimate, independent reasons.**

Next, the Court turns to whether DataCore has shown by clear and convincing evidence that Robinson's constructive discharge would have occurred "for legitimate, independent reasons

United States District Court
Northern District of California

even if the employee had not engaged in protected whistleblowing activities." *Lawson*, 12 Cal. 5th at 712 (2022). The Court finds that DataCore has not met this burden. DataCore argues that Robinson faced a series of adverse employment consequences, as described above, because "Plaintiff's issues demonstrate a lack of common sense, and DataCore is not required to tolerate such behavior." ECF No. 40-1 at 16. For example, DataCore points to the fact that Robinson stored "confidential company data such as a business plan on Google Drive instead of the company's internal SharePoint." *Id*. However, DataCore acknowledges, "Plaintiff should not have violated the policy whether he knew about it or not." *Id*. at 17. This is not enough to meet the higher burden of proof. DataCore has not provided documented, repeated concerns of the same issue, HR Department interventions such as a performance plan, nor reference to an egregious single action. Robinson's failure to properly save documents can be attributed to his lack of knowledge of, or access to, the policy. Although DataCore could have constructively discharged Robinson for independent reasons – and may well prove as much later in the case – at this stage, DataCore did not provide enough evidence that it would have implemented the adverse employment consequences absent Robinson's disclosure of the trademark concerns.

\* \* \*

Robinson has shown that there is a genuine issue of material fact regarding his statutory claim. *TW Elec. Serv.*, 809 F.2d at 630. He has raised genuine issues regarding "what illegal conduct he disclosed, whether he had reasonable cause to believe that federal law was being violated, and whether his whistleblowing activity was a contributing factor in his termination of employment." *Killgore v. SpecPro Pro. Servs., LLC*, 51 F.4th 973, 991 (9th Cir. 2022). Because Robinson has met his burden on his statutory claims, he has also met his burden on his overlapping wrongful termination claim. *Id.* (reversing district court's grant of summary judgment on Section 1102.5 claim and holding that "[b]ecause [plaintiff's] claim of wrongful termination in violation of public policy is derivative of his retaliation claim, we reverse the grant of summary judgment as to that claim as well.").

Finally, DataCore argues that Robinson does not have any evidence showing that DataCore acted with malice, fraud or oppression. In light of the Court's decision in this Order, the Court

7

finds that it is appropriate for Robinson's punitive damages claims to go to the jury.

## IV.   MOTION TO EXCLUDE

DataCore additionally moves to exclude the report and opinions of Robinson's expert, Neil J. Beaton, for failure "to produce an expert disclosure and fail[ure] to timely produce Mr. Beatons purported expert report by the deadline" of January 30, 2026.  ECF No. 35 at 1.  In response, Robinson explains that his counsel experienced serious medical issues, including an emergency surgery, a few days before the expert disclosure deadline.  As a result, Robinson's counsel served the expert disclose on February 5, 2026, and offered "offered to extend the time of the defendant's rebuttal report for additional time."  ECF No. 37 at 2.  DataCore did not accept the offer to comparably extend the rebuttal deadline and instead argues that Robinson "failed to show good cause" for the late production.  ECF No. 39 at 2.  Although Robinson failed to timely notify DataCore of the various medical issues that contributed to the delay, the Court does not exclude Robinson's expert for being untimely.

The Court ORDERS the parties to meet and confer to agree on a reasonable schedule for DataCore to both retain a rebuttal expert and to allow that expert adequate time to prepare a report.  The parties shall file a stipulation within one week of this Order outlining the schedule for the anticipated rebuttal expert.  Nothing in this Order prevents DataCore from seeking attorney's fees and costs for filing the motion to exclude.

## V.   CONCLUSION

DataCore's motion for summary judgment is DENIED.  DataCore's motion to exclude is DENIED.

**IT IS SO ORDERED.**

Dated: June 25, 2026

Noël Wise
United States District Judge

United States District Court
Northern District of California

8